**Patrick T. BOYLE et al.**

v.

**Frank NEWMAN et al.**

**No. 80–28–Appeal.**

Supreme Court of Rhode Island.

May 9, 1980.

Gerard McG. DeCelles, Providence, John D. Lynch, Warwick, for plaintiffs.

Letts, Quinn & Licht, Nicholas Trott Long, Daniel J. Murray, Joseph DeAngelis, Providence, for defendants.

## OPINION

PER CURIAM.

In mid-September 1979 the plaintiffs in this civil action were students in good standing at the University of Rhode Island (URI). At that time the faculty was on strike, classes were suspended, and a number of students were then residing on campus. Near the end of September two female students complained to URI's administrative staff that they had been sexually harassed by the plaintiffs. As a result of these complaints, the South Kingstown police arrested the plaintiffs on a variety of charges, and URI suspended each of the plaintiffs for a period of ten days. Thereafter, the plaintiffs were charged with violating certain provisions of the URI Community Standards of Behavior.

On October 3, 1979, plaintiffs sought injunctive relief in the Superior Court, claiming that the procedures regulating the disciplinary proceedings conducted before the

University Board on Student Conduct violated a myriad of their constitutional rights including those relating to due process, equal protection, and self-incrimination. Almost contemporaneously with the filing of plaintiffs' civil action, an ex parte restraining order was entered. It enjoined the defendants, URI's President (Frank Newman), its Director of Athletics (Maurice Zarchen), and the soccer coach (Geza Henni, Sr.) from (1) proceeding with the disciplinary proceedings; (2) preventing plaintiffs' participation in all academic and athletic endeavors; and (3) interfering in any way "with the full rights of each of the plaintiffs as students at the University of Rhode Island * * *." On the next day, October 4, 1979, a justice of this court, acting pursuant to our Rule 8, stayed that part of the restraining order that barred defendants and URI from proceeding with the disciplinary hearings, and on October 12, 1979, we continued the stay.

However, on October 18, 1979, plaintiffs appeared before a justice of the Superior Court and once again obtained an ex parte order that enjoined the holding of a disciplinary hearing scheduled to begin that evening at 7 p. m. This order was also stayed by an order of a justice of this court, once again pursuant to Rule 8.

On Friday, December 14, 1979, plaintiffs' prayer for a permanent injunction was heard in the Superior Court. At that time the disciplinary proceedings had ended, and the sanctions had been imposed but their implementation suspended because of the October 3 restraining order. Three of the five plaintiffs testified in support of their constitutional challenges by describing what transpired at the hearings. At the conclusion of the testimony, counsel for all the litigants agreed to submit memoranda on the issues raised, but disagreed concerning the deadline for submission. Finally, the trial justice resolved the question of time by saying, "I'll give you a month."

During the weekend counsel apparently were told to appear in court on Monday morning, December 17, 1979. All were present as the trial justice came onto the bench and offered the following remarks:

"I'll hand down a decision in this matter.

"On my way home last Friday, I was thinking about this case, and I felt that I could give you a quick decision, not on the constitutional questions raised, but I think the complainants are entitled to a permanent injunction for the following reasons:

"The parents of the petitioner[s] and the parents of the alleged victim, as well as the parents of hundreds of other young men and women, sent those individuals to the University of Rhode Island for an education. However, when they got there, they found the educational facilities were closed down. There was a strike going on. All academic proceedings had ceased. The students were not permitted to go to class, and I don't know whether they could be classified as students at that particular stage. They appear to me to be boarders, living in buildings owned by the State of Rhode Island, waiting for classes to commence. Consequently, they didn't attend classes, they received no assignments, they were not required to study nights, and they had idle time on their hands, and I don't know whether the University could be classified as a University during that particular stage, but in any event, if anything wrong took place that night or anyone had been harmed during that period, the blame can be laid strictly in the laps of the strikers.

"It's the opinion of this Court that if there had not been a strike and the academic classes were going on and these students were studying, that no harm would have taken place during that particular period, and I feel that the University is not entitled to take any disciplinary action against these students for something that was brought about by the conduct of the members of the faculty during that particular period, and for those reasons the Court will grant a permanent injunction against the disciplinary board from taking any action against these particular petitioners.

"You may enter an order to that effect."

An order embodying the mandate of the trial justice's decision was entered on January 21, 1980.

The defendants are before us claiming error in that there is a total lack of evidence to support the trial justice's conclusion. The plaintiffs, on the other hand, describe the trial justice's decision as an exercise in "judicial shorthand" we would classify the trial justice's rationale as a classic non sequitur which, while it may be of some comfort to the plaintiffs, affords no legal basis for what on this record amounts to an unwarranted judicial intrusion upon the University's academic autonomy. We believe that the public interest as well as the interests of the plaintiffs [1] and URI will best be served by having the plaintiffs' constitutional claims resolved in an expeditious and thoughtful manner.

The defendants' appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for Washington County with a direction that it be heard forthwith.

1. The criminal proceedings have all been terminated in favor of the plaintiffs either by judgments of acquittal or by a jury verdict of not guilty.